UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**CHRISCHANDLE JOHNSON,**
    Plaintiff,

**v.**

**Case No. 5:24-cv-1268-CLM**

**CRESTWOOD MEDICAL
CENTER,**
    Defendant.

## MEMORANDUM OPINION

Chrischandle Johnson proceeds pro se and sues her employer, Crestwood Healthcare L.P., for race discrimination under Title VII.[1] Johnson brings three claims relating to her pay. Crestwood now moves for summary judgment on each of Johnson's claims.

For the reasons stated below, the court **GRANTS** Crestwood's motion (doc. 30) on all counts and **DISMISSES** Johnson's claims **WITH PREJUDICE**.

## BACKGROUND

### A.    Johnson's Work at Crestwood

Crestwood is a community healthcare provider in Huntsville. Johnson is a black woman. She began working for Crestwood full-time in May 2018 and still works there today. Johnson is a Phlebotomist Lead. In that role, she is "responsible for performing punctures on patients for blood sampling." (Doc. 40, p. 5). Johnson's pay has increased over the years. For example, her hourly pay rate from December 2022 to April 2023

---

[1] Crestwood Healthcare L.P. was improperly identified as "Crestwood Medical Center" in Johnson's complaint.

was $18.28 but increased to $18.66 from April 2023 to May 2024. Since May 2025, Crestwood has paid Johnson $19.51 per hour.

The Crestwood department in which Johnson works is divided into an inpatient division and outpatient division. Johnson works in the outpatient division. In the outpatient division, Phlebotomist Leads, like Johnson, work in different locations, like doctors' offices and a now-closed 333 Outreach Center on Crestwood's main campus. Crestwood will move Phlebotomist Leads to different work locations depending on the locations' needs. In most cases, Crestwood will assign a Phlebotomist Lead to one location for a period of days or weeks before moving them to a different location.

After the Covid-19 pandemic broke out, Crestwood opened multiple clinics where workers like Johnson would help with testing. Johnson worked at one of Crestwood's Covid clinics some time during 2021-2022.

## B.   The Chief Phlebotomy Manager Position

Crestwood promoted Raqual Carr, a white woman, to the Chief Phlebotomy Manager position in March 2022. This promotion led Carr to receive a pay increase from $17.16 to $19.65 per hour. As Chief Phlebotomy Manager, Carr worked at Crestwood's 333 Outreach Center, where outpatients would have blood drawn. Carr worked "independently and with little to no oversight," which is the chief reason she received the elevated job title and pay. (*See id.* at p. 7). At times, Crestwood sent new employees to the 333 Outreach Center to receive training. Carr would sometimes help with this training, but according to Johnson, all Phlebotomist Leads "can train" if needed. (*See* doc. 31-4, pp. 30-31).

Around the same time Carr was promoted, Johnson also worked at the 333 Outreach Center. When Carr took medical leave in March 2024, Johnson's supervisor, Tasa Kelley, asked Johnson to help train new employees in Carr's absence. Because this request required Johnson to take on additional training responsibilities, Kelley asked Crestwood to increase Johnson's pay. On April 9, 2024, Crestwood's HR Director,

Michael Pocchiari, informed Kelley that Johnson would receive a $336 bonus payment for helping train new employees during Carr's absence. Johnson received the one-time bonus.

In June 2024, Crestwood learned that Carr would not be returning to work. So Kelley asked Pocchiari if Johnson could take the Chief Phlebotomy Manager position. Pocchiari informed Carr that Crestwood needed to evaluate whether the position was necessary because Crestwood was considering closing the 333 Outreach Center. And a short time later, Pocchiari informed Kelley that Crestwood would not backfill Carr's job.

The next day, Kelley again asked Pocchiari if she could move Johnson "into a trainer position that Raquel Carr originally had." (Doc. 31-4, p. 176). Pocchiari clarified that "[Carr's] position was manager, not trainer. The manager position is not being backfilled." (*Id.*). In that same message, Pocchiari told Kelley that if she wanted to request a raise for Johnson, she could ask that it be put on Crestwood's "Compensation Committee agenda." (*Id.*). Kelley apparently requested that Crestwood give Johnson a pay raise, and Crestwood's Compensation Committee denied the request. (*See* doc. 40-1, pp. 48-49). Crestwood closed the 333 Outreach Center and never backfilled Carr's manager role.

## C.    Float Phlebotomists

Crestwood employs Float Phlebotomists to fill in at locations based on last-minute schedule changes or unexpected needs. For example, if a Phlebotomist Lead calls in sick, Crestwood might send a Float Phlebotomist to an outpatient location to fill in for the sick worker. Unlike Phlebotomist Leads, Float Phlebotomists' work locations can be more unpredictable. Because of this unpredictability, Float Phlebotomists receive an extra $1.50 per hour compared to Phlebotomist Leads.

During the relevant time for Johnson's claims, Crestwood employed two Float Phlebotomists: Patricia Rucker and Felisa Lewis. Rucker, a white woman, became a Float Phlebotomist in August 2022. Crestwood

paid Rucker $17.00 per hour from August 2022 to April 2023, $18.74 from April 2023 to May 2024, and $18.92 from May 2024 until the end of her employment in August 2024. Lewis, a black woman, became a Float Phlebotomist in April 2023. Crestwood paid her $19.46 per hour from October 2022 to April 2023, and $19.66 per hour from April 2023 until the end of her employment in July 2024.

Johnson and other Phlebotomist Leads typically work at locations for longer periods of time than Float Phlebotomists and only work outside of their normal location as needed. But Crestwood required Johnson to work outside of her typical location often because the 333 Outreach Center was "slow" and she had ample experience. (*See* doc. 31-4, pp. 28, 69-70). According to Johnson, she repeatedly asked Crestwood to give her the $1.50 pay bump that Float Phlebotomists receive because of the work Crestwood required her to do outside her typical locations. But Crestwood denied her requests.

## D.   Johnson's Claims and Crestwood's Motion

Johnson filed her EEOC charge on June 9, 2024. After receiving her right to sue letter, Johnson filed her complaint in this court. Johnson brought one claim for race discrimination and alleged the following in her support of her claim:

E.   The facts of my case are as follows. Attach additional pages if needed. _____

> On 02/28/2024 I was given the position of trainer, which came with an increase in pay. Currently, my rate of pay remains the same despite numerous attempts to rectify the problem. I did, however, receive a "bonus" check in the amount of $336. This payment was said to cover my payment from feb to April. When asked for an explaination of the break down of that payment, none was given. No additional payments or adjustment in my pay has been made

(Doc. 1, p. 5). As shown, Johnson pleaded only one race discrimination claim based on Crestwood's alleged failure to increase her pay when she took over Carr's training duties. But in Johnson's deposition, she purported to raise two other claims. First, Johnson claimed that, since Crestwood required her to "float" more than other Phlebotomist Leads, Crestwood should have paid her an extra $1.50 per hour. Second, Johnson claimed that Crestwood paid her less than white colleagues when she worked at one of Crestwood's Covid-19 clinics in 2021-2022. Crestwood now moves for summary judgment on each of Johnson's three claims. (Doc. 30).

## LEGAL STANDARD

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party asking for summary judgment always bears the initial responsibility of telling the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56 requires the nonmoving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

## DISCUSSION

As explained, Johnson pleaded one claim in her complaint and added two in her deposition. Crestwood argues that it's entitled to summary judgment on all three. The court addresses each below.

## A.    Count 1: "Trainer Pay"

In Count 1, Johnson contends that, because of her race, Crestwood denied her a raise when she took over the "trainer" position for Carr in March 2024. Crestwood argues that Johnson fails to establish a prima facie case of race discrimination for this claim because (1) Carr is not a proper comparator and (2) Johnson wasn't qualified to receive the pay increase.

1. <u>Proper Standard</u>: Crestwood briefs this issue by using comparator analysis under the *McDonnell Douglas* burden-shifting framework. But the Eleventh Circuit has signaled a departure from *McDonnell Douglas* toward a basic, Rule-56 based inquiry: Has the Plaintiff submitted enough evidence to allow a reasonable juror to find that the Defendant employer discriminated against the Plaintiff because of her race? *See Berry v. Crestwood Healthcare, LP*, 84 F.4th 1300, 1310 (11th Cir. 2023) ("The legal standard—and the question for the court at summary judgment—is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee"); *Tynes v. Fla. Dep't of Juv. Justice*, 88 F.4th 939, 946-47 (11th Cir. 2023) ("This rearticulation of the summary judgment standard arose in large part because of widespread misunderstandings about the limits of *McDonnell Douglas*—the same misunderstandings that persist today. A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action— the ultimate inquiry in a discrimination lawsuit."). And just last year, Justice Thomas criticized *McDonnell Douglas's* use in judging Rule 56 motions, saying that "litigants and lower courts are free to proceed without the *McDonnell Douglas* framework." *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 326 (2025) (Thomas, J., concurring).

So this court will follow the Circuit and Justice Thomas's lead by judging Crestwood's motion under Rule 56 alone.

2. <u>Application of Rule 56</u>: Under Rule 56, Crestwood, as the moving party, must show there is no genuine dispute about a material fact.

6

Johnson's trainer pay claim requires her to prove as a matter of fact that, because of her race, Crestwood denied her a pay raise when she took over Carr's position. *See* 42 U.S.C. § 2000e-2(a)(1).

Crestwood says that race played no role in its decision not to raise Johnson's pay when she took over Carr's training duties because, contrary to Johnson's allegations, Johnson never held the same role as Carr, and Crestwood did not backfill Carr's role. Even viewed in Johnson's favor, the parties' evidence supports Crestwood's rationale. To be sure, Crestwood asked Johnson to help train new employees when Carr took leave. But Johnson admits that she was qualified to help with training and Crestwood paid her a $336 bonus for that extra work. (*See* doc. 31-4, pp. 15-16, *see also* doc. 31-1, p. 5). The record also shows that, when Carr decided not to return to work at Crestwood, Crestwood simply decided not to backfill her job as Chief Phlebotomy Manager. (*See* doc. 31-1, p. 5; doc. 31-4, p. 176). In other words, Johnson took on extra duties (which she was qualified to take on) when Carr took leave, and Johnson received a one-time bonus for her efforts. Crestwood never backfilled Carr's role as Chief Phlebotomy Manager, so, consistent with Crestwood's rationale, Johnson was not entitled to a pay raise.

Crestwood has shown the record supports its contention that race played no role in its decision not to raise Johnson's pay. So, to avoid summary judgment, Johnson must offer some evidence that would allow a juror to infer discrimination, thus creating a genuine issue of material fact for a jury to decide. She cannot.

As evidence of discrimination, Johnson relies on the fact that she assumed additional training responsibilities—both during Carr's leave and after the Chief Phlebotomy Manger position remained unfilled—without a corresponding permanent increase in pay. But as shown, Johnson was qualified to perform training duties, as are all Phlebotomist Leads. And Johnson offers no evidence that similarly situated, white employees were treated more favorably, that Crestwood deviated from its

compensation policies, or that Crestwood's stated rationale for not giving her a raise is pretext.

At most, the record suggests a dispute over Johnson's workload. But Title VII does not convert ordinary workplace grievances into actionable claims. *See Mills v. Cellco P'ship*, 376 F. Supp. 3d 1228, 1247 (N.D. Ala. 2019). And Crestwood's mere assignment of additional responsibilities, particularly where Johnson was qualified to perform them, does not permit an inference of racial discrimination.

To sum up, Crestwood presents evidence that would allow a reasonable juror to find that Johnson was not denied a pay raise because of her race. Johnson fails to counter with evidence that would allow the same reasonable juror to instead find that Johnson's race played a role in Crestwood's decision. So the court will **grant** Crestwood's motion for summary judgment on Count 1 because there is no genuine issue of material fact for a jury to decide.

## B.    Count 2: "Floater Pay"

Johnson claims in Count 2 that Crestwood requires her to "float" around locations more than other Phlebotomist Leads but, because of Johnson's race, Crestwood has refused to give her the $1.50 per hour pay increase Float Phlebotomists receive. Crestwood argues that Johnson's claim in Count 2 fails because she (1) failed to exhaust her administrative remedies, (2) failed to assert the claim in her complaint, and (3) cannot establish a prima facie case of pay discrimination.

1. *Failure to exhaust*: The court finds that Johnson did not fail to exhaust her administrative remedies for Count 2. While it's true that Johnson's EEOC charge included only generic allegations about "white comparators" receiving "extra hourly income" for performing similar jobs as Johnson, these statements were enough to bring Johnson's "floater pay" claim within the scope of her charge. After all, courts in the Eleventh Circuit "do not strictly construe EEOC charges" because the purpose of the exhaustion requirement is merely to give the EEOC the opportunity

to conciliate the employment dispute. *See Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1345-46 (11th Cir. 2022*); see also Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004). Johnson's general allegations about pay disparity were enough for that purpose.

2. *Failure to plead:* That said, the court agrees with Crestwood that Johnson failed to plead her "floater pay" claim. Johnson's complaint does not mention floater pay, nor does it include any factual allegations pertaining to the issue. Instead, Johnson's entire complaint focuses on her "trainer pay" claim in Count 1. Thus, Johnson failed to give Crestwood adequate notice of her trainer pay claim in Count 2, and Crestwood is entitled to summary judgment. *See MSP Recovery Claims, Series LLC v. United Auto Ins.*, 60 F.4th 1314, 1319 (11th Cir. 2023) (stating that a defendant must be "on notice as to the claim asserted against him *and* the grounds on which it rests").

Because Johnson failed to plead her trainer pay claim in Count 2, the court need not address Crestwood's argument that Johnson fails to establish a prima facie case of discrimination. The court will thus **grant** Crestwood's motion for summary judgment on Count 2.

### C.    **Count 3: "Covid-19 Clinic Pay"**

In Count 3, Johnson claims that colleagues were paid more than her for doing the same work at one of Crestwood's Covid-19 clinics in 2021-2022. Crestwood contends this claim fails because, among other reasons, it is untimely. The court agrees.

To sue under Title VII, a plaintiff must file an EEOC charge within 180 days of the alleged discriminatory act. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). "If a plaintiff does not submit a timely EEOC charge, she generally may not challenge the alleged discriminatory conduct in court." *Henderson v. Murphy Oil USA*, 2024 WL 318645, at *1 (M.D. Ala. Apr. 30, 2024) (citing *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000)).

9

Johnson filed her EEOC charge on June 9, 2024, meaning that her Title VII claims are limited to discriminatory actions taken 180 days before that date, or, more specifically, after December 12, 2023. But Johnson admitted in her deposition that her claim in Count 3 arose sometime in 2021 or 2022. (*See* doc. 31-4, p. 26). So if Crestwood discriminated against Johnson by paying her less money than white colleagues at the Covid clinic, it did so well over a year before Johnson filed her EEOC charge. Thus, Johnson failed to timely file her EEOC charge for her claim in Count 3, and the court must **grant** Crestwood's motion for summary judgment.

### CONCLUSION

For these reasons, the court **GRANTS** Crestwood's motion for summary judgment (doc. 30) on all counts and **DISMISSES** Johnson's claims **WITH PREJUDICE**. The court will enter a separate order carrying out its ruling and closing this case. The court **DIRECTS** the Clerk of Court to send a copy of this opinion to Johnson at her address of record.

**DONE** and **ORDERED** on June 30, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE